******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# WELLS FARGO BANK, N.A. *v.* SANDRA CALDRELLO
## (AC 41074)

Keller, Elgo and Harper, Js.

*Syllabus*

The plaintiff bank, W Co., sought to foreclose a mortgage on certain real property owned by the defendant, who had executed a promissory note in the amount of $480,000 in favor of S Co., which was secured by a mortgage on the subject property. In its complaint, W Co. alleged that it was entitled to collect the debt evidenced by the note and to enforce the mortgage as S Co.'s successor by merger, that the defendant was in default on her obligations under the note and that it had exercised its right to accelerate the debt. The defendant filed an answer and a thirty-two count revised counterclaim, alleging, inter alia, violations of the Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-110a et seq.) and the Truth in Lending Act (TILA) (15 U.S.C. § 1601 et seq.). The trial court granted the plaintiff's motion to strike the revised counterclaim, striking the CUTPA and TILA counts on ground that the applicable statutes of limitations barred those claims. Thereafter, W Co. filed a motion for summary judgment as to liability and presented to the court the original promissory note, which had not been endorsed and remained payable to S Co., and the recorded mortgage. In support of its motion, W Co. submitted an affidavit from S, its vice president for loan documentation, who, on the basis of her examination of W Co.'s business records, averred that following the execution of the note and mortgage, S Co. merged and changed its name to M Co., that M Co. converted to F Co. and that F Co. merged into W Co., thereby making W Co. the successor by merger to S Co. and the holder of the subject note. S attached to her affidavit supporting documentation. The plaintiff also submitted an affidavit of H, its implementation consultant, who, on the basis of his examination of W Co.'s business records, averred that W Co. was properly identified on the loan transfer history as the investor entity that owned the defendant's note. The defendant filed an objection to the motion for summary judgment asserting that W Co. failed to provide any documents that proved that it had met its burden to prove standing. The defendant's primary argument concerned a transaction whereby S Co. transferred or sold the note to its subsidiary, L Co. She asserted that M Co. could not have reacquired ownership of the note without L Co. having first endorsed the note and that there was no endorsement attached to the note at the time W Co. commenced the foreclosure action. In her affidavit in support of her objection, the defendant averred, inter alia, that she had personal knowledge of W Co.'s lack of standing. The trial court granted W Co.'s motion for summary judgment as to liability, concluding that W Co.'s affidavits and attached documentation had established that it was the successor to S Co. and entitled to enforce the note, and that the defendant's submissions in opposition to the motion lacked an adequate evidentiary foundation. Thereafter, W Co. filed a notice of supplemental document production that included a copy of the note with an allonge blank endorsement. The defendant then filed a motion for summary judgment, challenging W Co.'s standing on the basis of the note endorsed in blank. She renewed her claim that L Co. could not have transferred the note back to M Co. without an endorsement. The trial court denied the defendant's motion for summary judgment, treating it as a motion to reargue. The defendant subsequently filed a cross motion for summary judgment and a motion for a new trial, again requesting that the court address the reasons for W Co.'s endorsement of the note in blank, which she considered to be newly discovered evidence that undermined W Co.'s standing as the holder of the note at the time the foreclosure action was commenced. The defendant also filed an application for issuance of subpoenas for two witness, who had signed affidavits of debt on behalf of W Co., stating that she was seeking information related to the blank endorsement. Thereafter, the trial court, held a hearing on W Co.'s motion for a judgment of strict foreclosure, during which it marked off the defendant's cross motion

for summary judgment, motion for a new trial and application for subpoenas. The trial court then rendered a judgment of strict foreclosure, and the defendant appealed to this court. *Held*:

1. The defendant could not prevail on her claim that the trial court erred in concluding that no genuine issue of material fact existed with respect to W Co.'s standing and in rendering summary judgment as to liability in W Co.'s favor: W Co. met its evidentiary burden and raised the presumption that it was the holder of the note and rightful owner of the debt, as the production of the original note, W Co.'s detailed affidavits, and statutory and case law established that W Co. was the successor to S Co. and entitled to enforce the note, the undisputed evidence having indicated that after L Co. converted to a limited liability company and transferred the note back to M Co., M Co. maintained its status as holder of the note when it reacquired the note pursuant to statute (§ 42a-3-207), and the later possession of the note by any successor in title to S Co., including W Co., entitled the successor to stand in the shoes of S Co. and to assume its rights as holder of the note, and, under federal banking law (12 U.S.C. § 215a [e]), all of S Co.'s rights in the note automatically transferred to W Co. without the need for any endorsement; moreover, the defendant's submissions in opposition to W Co.'s motion for summary judgment failed to satisfy her burden to rebut, with competent evidence, the presumption that W Co., as the holder of the note, was also the rightful owner of the debt and had standing to bring the action, as she failed to establish an adequate foundation to support the admission of her personal interpretation of the various banking documents that she referred to in her affidavit or that were submitted by her in opposition to the motion, and she presented no evidence that some entity other than W Co. owned the note at the time this action was commenced or at any time thereafter.

2. This court declined to review the defendant's claim that, after the trial court granted W Co.'s motion for summary judgment with respect to liability but prior to the time that it rendered the judgment of strict foreclosure, it deprived her of her right to conduct additional discovery and her right to a new trial: the record was inadequate to review the defendant's claim that she was denied a new trial, as the trial court marked off her cross motion for summary judgment and her motion for a new trial, and, therefore, there was no ruling on the motion for a new trial for this court to review, and the defendant failed to provide this court with a transcript of the proceedings related to the trial court's denial of her motion for summary judgment; moreover, the defendant failed to adequately brief or to provide an adequate record for review of her claim that she was denied discovery in order to properly undermine W Co.'s claim of standing as a result of the attachment of the blank endorsement to the subject note after summary judgment was rendered in favor of W Co.

3. The defendant's claim that the trial court erred in striking the counts of her counterclaim alleging CUTPA and TILA violations was not reviewable, the defendant having failed to brief that claim adequately; the portions of the defendant's principal and reply briefs that address the stricken counts of her counterclaim under CUTPA and TILA failed to address, much less analyze, the standard of review with respect to motions to strike, the application of the second limitation to the rule that a statute of limitations must be pleaded as a special defense, or the precise nature of the allegations pleaded in her revised counterclaim that rendered her claims legally sufficient to refute the court's conclusion that the statutes of limitations relevant to her TILA and CUTPA claims had expired, and she improperly alluded to additional facts concerning an alleged denial of her right to a mortgage modification or other relief programs as a violation of CUTPA, which were not alleged in the revised counterclaim.

Argued February 5—officially released August 20, 2019

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the defendant, and for other relief, brought to the Superior Court in the judicial district of New London, where the defendant filed a counterclaim; thereafter, the court, *Cosgrove, J.*, granted the plaintiff's

motion to strike the defendant's revised counterclaim; subsequently, the court granted the plaintiff's motion for summary judgment as to liability; thereafter, the court, *Hon. Joseph Q. Koletsky*, judge trial referee, denied the defendant's motion for summary judgment; subsequently, the court, *Calmar, J.*, granted the plaintiff's motion for a judgment of strict foreclosure and rendered judgment thereon; thereafter, the court, *Calmar, J.*, denied the defendant's motion to open the judgment, and the defendant appealed to this court. *Affirmed.*

*Sandra Caldrello*, self-represented, the appellant (defendant).

*William J. Hanlon*, with whom, on the brief, was *David M. Bizar*, for the appellee (plaintiff).

*Opinion*

KELLER, J. The self-represented defendant,[1] Sandra Caldrello, appeals from the judgment of strict foreclosure rendered in favor of the plaintiff, Wells Fargo Bank, N.A. The defendant claims that[2] (1) the court erred in concluding that a genuine issue of material fact did not exist with respect to the plaintiff's standing to foreclose the mortgage and rendering summary judgment as to liability in favor of the plaintiff, (2) after the court granted the motion for summary judgment with respect to liability but prior to the time that it rendered judgment of strict foreclosure, the court deprived her of her right to conduct additional discovery and her right to a new trial related to the fact that, following the rendition of summary judgment, the plaintiff attached a blank endorsement to the note at issue in this action, and (3) the court erred in granting the plaintiff's motion to strike two counts of her counterclaim alleging violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and the Truth in Lending Act (TILA),[3] 15 U.S.C. § 1601 et seq. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to this appeal. On September 12, 2012, the plaintiff commenced this foreclosure action. The complaint alleged that on February 9, 2007, the defendant signed a promissory note in the amount of $480,000 in favor of the World Savings Bank, FSB (World Savings). The note was secured with a mortgage on property owned by the defendant known as 939 Pequot Avenue in New London. The plaintiff alleged that it was the party entitled to collect the debt evidenced by the note and the party entitled to enforce the mortgage, as it is the successor by merger to the original mortgagee, World Savings, that the defendant was in default on her obligations under the note, and that it had exercised its right to accelerate the debt and to commence this action.

Prior to rendering summary judgment as to liability in favor of the plaintiff, the court, *Cosgrove, J.,*[4] granted the plaintiff's motion to strike the defendant's revised counterclaim. The circuitous procedural journey to the striking of the defendant's counterclaim commenced on February 11, 2015, when the defendant filed her first of many sets of counterclaims and associated "supplements" and "addenda." On May 20, 2015, after the plaintiff had previously filed a series of requests for the defendant to revise her counterclaim, the defendant filed a revised counterclaim containing thirty-two counts.

On August 4, 2015, the plaintiff moved to strike all thirty-two counts of the revised counterclaim. On October 23, 2015, the defendant filed a "Defendant's Addendum to Counterclaims." The plaintiff moved to strike

the addendum, arguing that the defendant had failed to satisfy the requirements of Practice Book § 10-60 and had improperly amended her revised counterclaim. Judge Cosgrove granted the plaintiff's motion to strike the addendum on December 4, 2015, simultaneously overruling the defendant's objection to the plaintiff's motion to strike her addendum.

On January 5, 2016, Judge Cosgrove issued a memorandum of decision striking the defendant's revised counterclaim. On January 20, 2016, the defendant filed a counterclaim containing thirty-one repleaded counts. The plaintiff again moved to strike all of the counts of the counterclaim. On May 3, 2016, Judge Cosgrove granted in part the plaintiff's motion, striking all but one of the defendant's repleaded counts as legally insufficient or as asserting claims on which relief may not be granted in the form of a judgment on a counterclaim. The court did not strike count twenty-nine, however, which alleged breach of contract.[5]

In its January 5, 2016 memorandum of decision, the court agreed with the plaintiff's argument that in ruling on the motion to strike, it could address the plaintiff's argument that the statutes of limitations applicable to the CUTPA and TILA causes of action barred those claims. Although a claim that an action is barred by the lapse of the statute of limitations usually must be pleaded as a special defense, and not raised by a motion to strike; see *Forbes* v. *Ballaro*, 31 Conn. App. 235, 239, 624 A.2d 389 (1993); see also Practice Book § 10-50; the court determined that the issues in this case met one of the two limited situations where the use of a motion to strike to raise the defense of the statute of limitations is permissible. See *Forbes* v. *Ballaro*, supra, 239–40 ("where a statute gives a right of action which did not exist at common law, and fixes the time within which the right must be enforced, the time fixed is a limitation or condition attached to the right—it is a limitation of the liability itself as created, and not of the remedy alone" [internal quotation marks omitted]).

Noting that the execution of the note and mortgage occurred on February 9, 2007, Judge Cosgrove, after reviewing the defendant's myriad allegations pertaining to violations of the two statutes,[6] determined that "[c]ounts eight through ten [of the counterclaim] allege inaccurate material disclosures, as opposed to a failure to provide material disclosures [and], therefore, the defendant's right to rescind expired three years from the date of consummation or delivery of all material disclosures. While counts eight through ten allege inaccurate material disclosures, count seven alleges that the closing agent failed to provide copies of the signed closing documents. Even taking this fact in the light most favorable to the defendant—that the closing agent is an agent of the plaintiff and the closing documents are material disclosures as defined by 12 C.F.R.

§ 1026.23 (a) (3) (ii)—the defendant's claim is still barred by 15 U.S.C. § 1635 (f)'s statute of limitation[s].[7] The [defendant] fails to allege any facts in [counts] seven or thirty regarding the transfer of all of the defendant's interest in the property or the sale of the property, so the date of consummation remains the time measure. More than three years elapsed between February 9, 2007 and August 31, 2012. Further, while the defendant alleged that she has the right of rescission under recoupment pursuant to TILA, she has not alleged recoupment as a matter of defense, pursuant to 15 U.S.C. § 1640 (e), but rather, as a counterclaim. Finally, equitable tolling does not apply to [count] thirty because '[§] 1635 (f) completely extinguishes the right of rescission at the end of the [three] year period.' *Beach* v. *Ocwen Federal Bank*, [523 U.S. 410, 412, 118 S. Ct. 1408, 140 L. Ed. 2d 566 (1998)]." (Footnote added.) Judge Cosgrove concluded that the statute of limitations pursuant to TILA expired on February 9, 2010. He applied the same expiration date in striking counts eight through ten alleging CUTPA violations, noting that CUTPA, a statutory cause of action that did not exist at common law, also has a limitation period of three years after the occurrence of a violation. See General Statutes § 42-110g (f). Judge Cosgrove further concluded that the defendant had failed to plead facts sufficient to demonstrate fraudulent concealment, which might otherwise toll the statute of limitations.

On January 20, 2016, the defendant filed a thirty-one count amended counterclaim, which she corrected by changing a date, on January 25, 2016. The plaintiff again moved to strike the counterclaim. Judge Cosgrove struck all of the counts of the amended counterclaim except a single breach of contract claim, agreeing with the plaintiff that the legal insufficiencies in the defendant's prior counterclaim had not been cured and that the defendant improperly had used her opportunity of pleading over pursuant to Practice Book § 10-44 to add additional claims.[8]

On June 15, 2016, the plaintiff filed a motion for summary judgment as to liability on its complaint and as to the defendant's counterclaim for breach of contract. In its memorandum of law in support of the motion, the plaintiff argued that there were no genuine issues of material fact regarding the defendant's liability under the note and the mortgage, and that summary judgment was proper because the defendant's counterclaim was legally insufficient.

During the course of this litigation, the plaintiff presented to the court and to the defendant the original promissory note and the recorded mortgage. The original note is an adjustable rate mortgage note, "pick-a-payment" loan signed by the defendant and payable to World Savings. Prior to the rendering of summary judgment, the original note had not been endorsed in

any manner and remained payable by its express terms to "[World Savings], a federal savings bank, its successor and/or assignees, or anyone to whom this Note is transferred." The recorded mortgage references this promissory note.

In support of its motion for summary judgment as to liability, the plaintiff submitted an affidavit from Shae Smith, the vice president for loan documentation for the plaintiff. In her affidavit, Smith averred that she is familiar with the business records maintained by the plaintiff, which records were made at or near the time of the event recorded by the plaintiff, that it was a regular practice for the plaintiff to make those records and that her knowledge was acquired from the examination of these business records. Smith stated that the defendant executed and delivered an adjustable rate mortgage note dated February 9, 2007, in the amount of $480,000 to World Savings. She further stated that the plaintiff is the successor by merger to the mortgagee. Specifically, Smith stated that on December 31, 2007, ten months after the making of the note and mortgage, World Savings merged and changed its name to Wachovia Mortgage, FSB (Wachovia). This transaction is documented by correspondence annexed to Smith's affidavit from the Office of Thrift Supervision within the United States Department of the Treasury. Smith further stated, on the basis of her examination of the plaintiff's business records, that, on November 1, 2009, Wachovia converted to a National Bank named Wells Fargo Bank, Southwest, N.A., and that on the same date Wells Fargo Bank Southwest, N.A., merged into Wells Fargo Bank, N.A., the plaintiff in this action. These conversions of corporate names and status were documented by correspondence from the Office of the Comptroller of the Currency annexed to the affidavit. Smith further averred that the plaintiff's attorney was in possession of the note at the time this litigation was commenced and that the note had been in default since December, 2011. Also annexed to Smith's affidavit was a copy of a "Notice to Cure and Intent to Accelerate" document sent to the defendant. Finally, Smith stated that the plaintiff had not received funds sufficient to cure the default on the defendant's promissory note.

Given that the plaintiff claimed to hold the note by virtue of a series of corporate mergers, name changes and conversions, the plaintiff provided an additional affidavit from Paul Hoff, the plaintiff's implementation consultant, to support its motion for summary judgment. Hoff averred that his affidavit was based on his examination of the business records maintained by the plaintiff and, specifically, his interpretation of the electronic records relating to the defendant's February 9, 2007 note and mortgage to World Savings. Hoff concluded that the plaintiff is properly identified on the loan transfer history as the investor entity that owned the defendant's note.

In its memorandum of law in support of its motion for summary judgment, the plaintiff argued that it had established with competent evidence a prima facie case of liability in a mortgage foreclosure action through the affidavits of Smith and Hoff, and the documentation attached to them, which established that (1) there was a loan, evidenced by the note, payable to World Savings; (2) the plaintiff was and, since prior to the commencement of the foreclosure action, had been the party entitled to collect the debt evidenced by that note; (3) the defendant was in default; and (4) the indebtedness due under the note had been accelerated. The plaintiff asserted that it had standing to foreclose on the mortgage because, as evidenced by the Hoff affidavit and its supporting exhibits, the plaintiff not only was in possession of the original note, but had the rights of the original holder of the note, World Savings, by operation of the federal merger statute, 12 U.S.C. § 215a (e) 2006.[9]

In her objection to the plaintiff's motion for summary judgment, relevant to standing, the defendant argued that the plaintiff failed to provide any documents that proved it was the owner of the note and had not met its burden to prove standing. She claimed that the plaintiff was defrauding the court with false assertions of ownership of the note. She questioned whether the affiants, Smith and Hoff, actually had personal knowledge of the facts to which they had attested.[10] Her primary argument concerned a transaction whereby World Savings transferred or sold the note to its subsidiary, World Loan Company (World Loan), on May 3, 2007. She asserted that Wachovia, which formerly was known as World Savings, could not have reacquired ownership of the note without World Loan having first endorsed the note, and that there was no endorsement attached to the note at the time the plaintiff commenced the foreclosure action. She also claimed that there was no evidence that World Savings or Wachovia had transferred the note. She further argued that the Federal Home Loan Bank of San Francisco took title to and owned the note by virtue of a Uniform Commercial Code financing statement, which was filed to establish a security interest in the assets of World Loan. The defendant argued, as well, that she had received a letter on May 2, 2012, from the plaintiff's counsel, stating in relevant part: "This office has been retained by Wachovia Mortgage, a Division of [the plaintiff], the mortgage servicer of the above-referenced mortgage loan, to commence a foreclosure." On the basis of this letter, the defendant claimed that the plaintiff did not own the note because "the foreclosure was requested by Wachovia . . . with [the plaintiff] named as the servicer."

The plaintiff argued that the transfers between World Savings and its subsidiary, World Loan, did not affect

its standing to enforce the note because after World Loan converted from a corporation to a limited liability company, World Loan Company, LLC, it transferred the note back to World Savings, which was renamed Wachovia, in 2009. Thus, the plaintiff argued, Wachovia maintained World Savings' status as a holder upon reacquiring the note from World Loan under Connecticut law pursuant to General Statutes § 42a-3-207.[11] The plaintiff also argued that when Wachovia, the renamed original payee of the note, converted and changed its name to Wells Fargo Bank Southwest, N.A., and on the same day, Wells Fargo Bank Southwest, N.A., merged into the plaintiff, the plaintiff, under the federal merger statute, obtained all of World Savings' rights in the note without need of an endorsement.

After considering the defendant's objection to the plaintiff's motion for summary judgment as to liability, Judge Cosgrove granted the motion, concluding that "[i]n this case, the plaintiff has provided to the court . . . the original note executed by the defendant. It is not endorsed but it need not be endorsed if the plaintiff can demonstrate that [it] is the corporate successor to the original mortgage[e], [World Savings]. The plaintiff's affidavits and cited statutes and case law establish that it is the successor to [World Savings] and entitled to enforce the note. . . . There is no dispute that the note has not been paid in accordance with it terms and that the defendant was give[n] notice of the intent to accelerate the debt." The court observed that the defendant's submissions in opposition to the motion for summary judgment, despite lacking an adequate evidentiary foundation to be considered, nonetheless "would be consistent with the plaintiff's affidavits."[12] (Emphasis omitted.)

Before the court rendered the judgment of strict foreclosure, the plaintiff filed a "Notice of Supplemental Document Production" on June 22, 2017, that included a copy of the note with an allonge blank endorsement dated February 8, 2017. The defendant, asserting that this recent endorsement was an attempt by the plaintiff to circumvent what she considered to be a valid objection to its standing (based on her allegation that the note, as a matter of law, needed an endorsement because at one point it had been sold by World Savings to its subsidiary, World Loan), filed a motion for summary judgment. Therein, she renewed her claim that World Loan Company, LLC, could not have transferred the note back to Wachovia without an endorsement.[13] In this motion, relative to standing, she referred to an affidavit of debt supplied by Diane F. Duckett, which was filed in court on April 20, 2017, and which indicated that the note was now endorsed in blank. She accused the plaintiff of fraud and deceit in order to fabricate a ground on which it had standing. The plaintiff filed an objection on June 22, 2017, noting that after Judge Cosgrove had rendered summary judgment in its favor,

the plaintiff recalled the note from its foreclosure counsel, endorsed it in blank and returned it to foreclosure counsel. This sequence of events is described in an amended affidavit of debt by Kimberly A. Mueggenberg that was attached to the plaintiff's objection. The plaintiff also argued that all of the issues raised in the defendant's motion for summary judgment dated May 8, 2017, already had been adjudicated by Judge Cosgrove in that they had been raised in the defendant's objection to the plaintiff's motion for summary judgment as to liability or in a motion for reconsideration of his order filed by the defendant on December 22, 2016, which had been denied by Judge Cosgrove on January 9, 2017.

On August 17, 2017, the court, *Hon. Joseph Q. Koletsky*, judge trial referee, denied the defendant's motion for summary judgment dated May 8, 2017, stating, "[t]he motion termed 'Motion for Summary Judgment' is denied. A previously granted motion to reargue occasioned the hearing of August 17, 2017, at which it became apparent that the self-represented defendant's motion was in reality an attempt to reargue a summary judgment granted by *Cosgrove, J.*, in favor of plaintiff . . . . Notwithstanding the procedural irregularities, the court heard extensive presentations from both parties. The court is of the opinion that the motion for summary judgment was correctly decided the first time."

Subsequent to Judge Koletsky's decision, the defendant filed a cross motion for summary judgment and a motion for a new trial, again demanding that the court address the reasons for the plaintiff's endorsement of the note in blank, which she considered to be newly discovered evidence that undermined the plaintiff's standing as the holder of the note at the time the foreclosure action was commenced.

Prior to the hearing on the plaintiff's motion for a judgment of strict foreclosure, the defendant applied, pursuant to Practice Book § 7-19, for issuance of subpoenas directed at the plaintiff's lawyers. Before the plaintiff could file its objection to the defendant's subpoena request, the court granted it. The plaintiff sought reconsideration and moved to quash the subpoenas. The court, *Nazzaro, J.*, conducted a hearing on April 24, 2017, and granted the plaintiff's motions to reconsider and to quash on May 8, 2017.

After the plaintiff reclaimed its motion for a judgment of strict foreclosure, the court set a hearing date of August 14, 2017. The defendant filed another request to subpoena the plaintiff's lawyers. Judge Cosgrove denied her subpoena request but rescheduled the August 14 hearing for September 11, 2017. On September 6, 2017, the defendant filed a third application for the issuance of subpoenas directed at two out-of-state witnesses, Duckett and Mueggenberg, who both signed affidavits of debt on behalf of the plaintiff, and which were filed

in support of its motion for a judgment of strict foreclosure. The defendant stated that she was seeking information on the "surprise" blank endorsement that was first mentioned in Duckett's affidavit that had been filed in court on April 20, 2017.

During the hearing on the plaintiff's motion for a judgment of strict foreclosure on September 11, 2017, counsel for the plaintiff represented to the court, *Calmar, J.*, that the plaintiff had "[p]ulled back" the note from counsel, endorsed it in blank, and returned it to counsel, and that counsel had informed Judge Koletsky about the endorsement before he denied the defendant's motion for summary judgment. Judge Koletsky determined that the defendant's motion for summary judgment was, in reality, an attempt to reargue the summary judgment that had been rendered in the plaintiff's favor by Judge Cosgrove. The defendant claimed she had not become aware of the endorsement until June 22, 2017.[14] After determining that Judge Koletsky had been made aware of the issue concerning the newly attached endorsement to the note, Judge Calmar marked the defendant's cross motion for summary judgment and her motion for a new trial off, ruling, "[a]s to the cross motion for summary judgment and the motion for a new trial, no action is necessary because there is no issue. First of all, Judge Koletsky had denied essentially a motion to reargue, so [the issue of liability is] resolved. And there's, therefore, no basis to have a motion for summary judgment pending. And whereas [the motion for a new trial] also was a motion to reargue effectively as to the issue of liability, he essentially denied a motion to retry the issues." Judge Calmar also marked off as moot the defendant's application for subpoenas for Duckett and Mueggenberg because the application was part of an effort to explore the issue of the creation of the blank endorsement, which he believed Judge Koletsky had addressed.

Judge Calmar then proceeded to conduct an evidentiary hearing on the plaintiff's motion for a judgment of strict foreclosure. He granted the plaintiff's motion on September 11, 2017.

On September 21, 2017, the defendant filed a motion to open the judgment of strict foreclosure. The court denied the motion, noting that the "[d]efendant lacks good cause to open and vacate this court's judgment of strict foreclosure. She asserts the same arguments that this court has repeatedly rejected in denying [the] defendant's motion to dismiss, three motions for summary judgment, as well as in a myriad of other motions and filings. [The] defendant cannot challenge issues that have already been decided."[15] This appeal followed.

Additional facts and procedural history will be set forth as necessary.

I

The defendant's first claim is that the court erred in concluding that a genuine issue of material fact did not exist with respect to the plaintiff's standing to foreclose the mortgage and the rendering of summary judgment as to liability in its favor. We disagree.

We begin with our standard of review. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. . . . When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 620, 72 A.3d 394 (2013). "In deciding a motion for summary judgment, the trial court must view evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material fact which, under applicable principles of substantive law, entitle him to judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *CitiMortgage, Inc.* v. *Coolbeth*, 147 Conn. App. 183, 190–91, 81 A.3d 1189 (2013), cert. denied, 311 Conn. 925, 86 A.3d 469 (2014). This court's review of a trial court's decision to grant a motion for summary judgment is plenary. Id., 191.

Evidence, for the purposes of a summary judgment motion, means affidavits made upon personal knowledge of "such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Practice Book § 17-46. Any other material submitted in support of or opposition to the motion must demonstrate that the proffer would be admissible under the rules of evidence. "The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." (Internal quotation marks omitted.) *Bank of America, N.A.* v. *Aubut*, 167 Conn. App. 347, 358, 143 A.3d 638 (2016).

To make out a prima facie case in a mortgage foreclosure action, the foreclosing party must show "that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any condi-

tions precedent to foreclosure, as established by the note and mortgage, have been satisfied." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Strong*, 149 Conn. App. 384, 392, 89 A.3d 392, cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014).

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *Bysiewicz* v. *DiNardo*, 298 Conn. 748, 758, 6 A.3d 726 (2010). "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Firstenberg* v. *Madigan*, 188 Conn. App. 724, 730, 205 A.3d 716 (2019).

The original note before Judge Cosgrove was unendorsed and payable to the plaintiff's predecessor, World Savings. The defendant asserts that five years before this action was commenced, the note was sold by the World Savings to its subsidiary, World Loan. According to the defendant, the plaintiff bore the burden of proving that it owned the note when it commenced this action by presenting evidence that the original note was sold back to its parent corporation. This would have required the attachment of a specific endorsement from World Loan Company, LLC, back to one of the plaintiff's merged predecessors, World Savings, Wachovia, or Wells Fargo Bank Southwest, N.A., or the plaintiff, or by the attachment of a blank endorsement.

The defendant cites to a variety of different cases in her appellate brief in an attempt to support her argument. For example, the defendant cites to a decision of the Florida Supreme Court, *Wright* v. *JPMorgan Chase Bank, N.A.*, 169 So. 3d 251 (Fla. 2015), in support of her contention that ownership of a note by a subsidiary does not give a parent corporation, *which is a distinct legal entity*, the right to enforce the note absent evidence that the parent corporation acquired such a right through, for example, a purchase or servicing agreement. The facts of that case, however, are markedly different from the present case. In *Wright*, the court concluded that there was no evidence of any transfer from the wholly owned subsidiary of JPMorgan Chase Bank, N.A., Chase Bank, USA, N.A., back to its parent corporation. Id. Here, however, the plaintiff presented undisputed evidence of a transfer from the subsidiary, World Loan Company, LLC, back to the parent corporation, Wachovia.

The affidavit of the plaintiff's implementation consul-

tant, Hoff, filed with the plaintiff's motion for summary judgment, explains the history of the note subsequent to its February 9, 2007 execution and refers to exhibits annexed to Hoff's affidavit. Hoff reviewed the plaintiff's business records and established the corporate and transactional history—a history that the plaintiff claims the defendant failed to rebut with any admissible evidence of her own.

Hoff discussed the history of both the note and the mergers that resulted in the plaintiff's right to assert ownership of the note, averring: "The note was assigned loan number *******4985. . . . In the regular course of business, [the plaintiff] maintains an electronic record relating to the note called the Loan Transfer History and it is [the plaintiff's] practice to update this record at or near the time of the event recorded.[16] . . . In the regular course of its business, [the plaintiff] maintains the Investor/Category Matrix, which is used to code events recorded in the Loan Transfer History.[17] . . . On November 19, 2007, [World Savings] changed its name to [Wachovia]. On November 1, 2009, [Wachovia] changed its name to Wells Fargo Bank Southwest, FSB, and merged into [the plaintiff]. These entities were consistently coded as investor '010' on the Investor/Category Matrix. . . . On the Investor/Category Matrix, [World Loan] and its successors in interest have been assigned the Asset Investor Number of '050'. . . . [O]n December 31, 2008, [World Loan] converted from a corporation to a limited liability corporation. These entities were consistently coded as investor '010' on the Invertor/category Matrix. . . . On the Investor/Category Matrix, the assignment of an asset investor number indicates that the investor has maintained ownership of the loan. Similarly, the entity and its successor in interest identified in the 'Risk' column indicate ownership of the loan. 'Non-asset investor numbers' are assigned when the loan is securitized or transferred to a non-affiliated third party. . . . On May 3, 2007, [World Savings] transferred the note to [World Loan]. This transfer was recorded in the Loan Transfer History relating to the Note on the line marked '5/03/07' and bearing the description 'sale to [World Loan]' in the field for 'additional transfer information.' The entry on the Loan Transfer History dated 05/03/07 shows an old investor ('Old INV') of '010' and a new investor ('New Inv') of '050', i.e. a transfer from [World Savings] to [World Loan]. . . . *The 1/23/09 entry reversed the 05/03/07 transfer.* The 01/23/09 entry on the Loan Transfer History shows an old investor . . . of '050' and a new investor . . . of '010, i.e., a transfer from World Loan Company LLC, [formerly known as World Loan][18] to [Wachovia]. The 01/23/09 entry also displays the notation 'Maint Investor' in the field for 'additional transfer information,' which means the Loan Transfer History record is being maintained, and the field of the Loan Transfer History being maintained is the identity of the

investor. . . . The 01/28/09 entry 'Maint Service Fee and Investor Loan' indicates the elimination of a servicing fee, which is consistent with the transfer of ownership from the World Loan Company [LLC] subsidiary to its corporate parent/servicer. . . . On the Loan Transfer History record each of the entries following 01/23/09 identify the investor as '010', which is [World Savings] and its successors in interest. [The plaintiff] has been [World Savings'] successor in interest since November 1, 2009. . . . [The plaintiff] is properly identified on the Loan Transfer History as the 'investor', which is the entity that owns the note." (Emphasis added; footnotes added.)

In Judge Cosgrove's memorandum of decision on the plaintiff's motion for summary judgment, he noted that the plaintiff previously had produced for the court's review the original unendorsed note, which was made payable to its corporate predecessor, World Savings. Smith's affidavit stated that, on or about May 2, 2012, the plaintiff transferred possession of the note to its attorney in order to initiate this action. In its complaint, the plaintiff alleged that on or before May 2, 2012, it "became and at all times since then has been the party entitled to collect the debt evidenced by said note and is the party entitled to enforce said mortgage."

With respect to the defendant's documentary submissions in opposition to summary judgment, in an affidavit dated August 15, 2016, the defendant claimed to have personal knowledge of the plaintiff's lack of standing as "the note was clearly sold and transferred to numerous parties all the while lacking endorsement essential to prove ownership." Appended to her affidavit, but not specifically referenced therein, are numerous other documents. The defendant appended the acceleration and notice of default letter that she received prior to the commencement of this action. She asserted that the letter, written on behalf of "Wachovia Mortgage, a Division of Wells Fargo Bank, NA, the mortgage servicer," proved that the plaintiff did not own the note because the foreclosure was requested by Wachovia with the plaintiff named as the servicer. The letter, apparently sent to the defendant by the plaintiff's counsel, however, is not evidence concerning whether the plaintiff owned the note. Moreover, by its terms, the letter clearly reflects that "Wachovia Mortgage, a Division of Wells Fargo Bank, N.A.," was the entity initiating the foreclosure action. The defendant also alleged that the plaintiff did not acquire the assets of World Loan, but this is not material because Hoff's affidavit states that the plaintiff had acquired the assets of Wachovia on November 1, 2009, after World Loan Company, LLC, formerly known as World Loan, transferred the note back to Wachovia on January 23, 2009. There was evidence that, on November 1, 2009, about nine months after the transfer of the note back to Wachovia, Wachovia merged into the plaintiff.

The defendant also presented evidence to demonstrate that the Federal Home Loan Bank of San Francisco (Federal Home) took title to and owned the note, which she claims had been securitized, by virtue of a Uniform Commercial Code financing statement, but such a statement is filed to establish a security interest in the assets of World Loan. The defendant is unable to demonstrate that having a security interest in collateral is the equivalent of taking title to the underlying collateral. See *Fidelity Mutual Life Ins. Co.* v. *Harris Trust & Savings Bank*, 71 F.3d 1306, 1309 (7th Cir. 1995) ("[a] security interest is not only not title; it is not a possessory interest"). The financing statement serves as notice to third parties of Federal Home's security interest in World Loan's assets, but it is not a transfer of assets or a prohibition on transfer. There is no persuasive evidence to support the defendant's claim that World Loan sold the note to Federal Home.

The defendant also claims, in the alternative, that, absent an endorsement, World Loan Company, LLC, retained title to the note sold to World Loan by Wachovia, and that World Loan Company, LLC, had gone out of business. The plaintiff's proof of this fact is a copy of a "Certificate of Termination" from the Office of the Secretary of State of Texas, which is an attachment to her objection to the plaintiff's motion for summary judgment. This certificate provides that World Loan Company, LLC, was "terminated" in 2012. As Judge Cosgrove noted, some of the defendant's submissions were consistent with the plaintiff's position. This document, if legitimate, merely establishes that it is quite unlikely that World Loan Company, LLC, will make any claim that it currently owns the note.[19]

Having thoroughly reviewed the affidavits and other documentation submitted by the plaintiff in support of its motion for summary judgment, we are satisfied that the plaintiff met its evidentiary burden and raised the presumption that it is the rightful owner of the debt. The plaintiff demonstrated its standing through affidavit testimony, documentation of regulatory approvals of the mergers, and the history of transfers related to the note, as well as the production of the original note itself. In showing that it was the successor by merger to the payee on the note, World Savings, the plaintiff also became the payee by operation of law and was the holder and presumptive owner of the note.

The undisputed evidence before the court reflects that, in 2007, World Savings transferred the note to its subsidiary, World Loan. After World Loan converted to a limited liability company, it transferred the note back to World Savings, then renamed Wachovia, in 2009.[20] Wachovia maintained its status as holder because it reacquired the note pursuant to the Uniform Commercial Code, § 42a-3-207. Under § 42a-3-207, "[r]eacquisition of an instrument occurs if it is transferred to a

former holder, by negotiation or otherwise." If the entity that was the original named payee on the note reacquires it, there is no cloud on that entity's title. See General Statutes Annotated § 42a-3-207, comment (West 2018). This statute applied to reestablish Wachovia, as the holder following the intercorporate transfer from World Loan Company, LLC, which resulted in Wachovia's reacquisition of the note. It allows a prior holder of a negotiable instrument to become a person entitled to enforce the instrument upon reacquiring such instrument without having to be burdened with any endorsements that might have occurred between the time of the first undertaking of liability and the reacquisition of the instrument. Under § 42a-3-207, "[r]eacquisition of an instrument occurs if it is transferred to a former holder, by negotiation or otherwise." "Holder" is defined in General Statutes § 42a-1-201 (21) (A) as "[t]he person in possession negotiable instrument that is payable either to bearer or to an identified person that is the person in possession."

As the comment to the Uniform Commercial Code explains, § 42a-3-207 implements "a rule of convenience" that relieves the reacquirer, a former holder, of "the burden of obtaining an indorsement that serves no substantive purpose." General Statutes Annotated § 42a-3-207, comment (West 2018); see also *Wells Fargo Bank*, *N.A.* v. *Sheikha*, 221 So. 3d 657, 659 (Fla. App. 2017).

Under the circumstances here, the later possession of the note by any successor in title to World Savings, including the plaintiff, entitled the successor to stand in the shoes of World Savings and to assume to the rights of a holder of the note. Under federal banking law, all of World Savings' rights in the note automatically transferred to the plaintiff without the need for any endorsement. See 12 U.S.C. § 215a (e). A federal bank merger transfers to and vests in the surviving bank "[a]ll rights, franchises and interests . . . in and to every type of property (real, personal, and mixed) and choses in action . . . by virtue of such merger with any deed or other transfer." Id. These broad transfers by merger of all rights and interests "in and to every type of property" included World Savings' rights as the note's holder. "[S]uch receiving association shall be deemed to be the same corporation as each bank or banking association participating in the merger." Id. After a merger with a creditor bank, the surviving corporation stands in the shoes of the original creditor under § 215a (e) and becomes the note's owner. By operation of federal law, the plaintiff became the owner and holder of both the note and mortgage at the time it merged with Wachovia,[21] which then held the note. No assignment, document transfer, or court action was necessary for the plaintiff or Wachovia to acquire the loan and to enforce it. "[A]fter a merger with a creditor bank, the surviving corporation . . . *is* the original creditor."

(Emphasis in original.) *Dues* v. *Capital One, N.A.*, Docket No. 11-CV-11808 (CEB) (E.D. Mich. August 8, 2011); see also *Sprague* v. *Neil*, United States District Court, Docket No. 1:05-CV-1605 (SHR) (M.D. Pa. October 19, 2007) ("By way of merger, Universal Bank transferred all of its rights and property to Citibank, including its property interest in [p]laintiff's debt. Citibank assumed all rights and property, including [p]laintiff's debt, as its own and thus stands in the shoes of the previous two banks."). As the successor to the bank named as the original payee on the note, the plaintiff is considered its owner. Hence, the plaintiff, as the original creditor under the note, has standing to enforce it and standing to foreclose the mortgage under General Statutes § 49-17.[22]

Applying merger principles, numerous courts have rejected claims similar to that raised by the defendant and have concluded that the plaintiff is the successor to Wachovia and World Savings. See, e.g., *Park* v. *Wells Fargo Bank*, United States District Court, Docket No. C 12-2065 (PHJ) (N.D. Cal. August 13, 2012).

As a result of the plaintiff's having proven its status as a holder of the note, the burden shifted to the defendant, as the maker of the note, to rebut the presumption that the plaintiff, as the holder of the note, was also the rightful owner of the debt. See *JPMorgan Chase Bank, National Assn.* v. *Simoulidis*, 161 Conn. App. 133, 146–47, 126 A.3d 1098 (2015), cert. denied, 320 Conn. 913, 130 A.3d 266 (2016). "That presumption may be rebutted by the defending party, but the burden is on the defending party to provide sufficient proof that the holder of the note is not the owner of the debt, for example, by showing that ownership of the debt had passed to another party. It is not sufficient to provide that proof, however, merely by pointing to some documentary lacuna in the chain of title that might give rise to the possibility that some other party owns the debt. In order to rebut the presumption, the defendant must prove that someone else is the owner of the note and debt. Absent that proof, the plaintiff may rest its standing to foreclose on its status as the holder of the note." (Emphasis omitted; footnote omitted.) *U.S. Bank, National Assn.* v. *Schaeffer*, 160 Conn. App. 138, 150–51, 125 A.3d 262 (2015).

The defendant's submissions to counter the plaintiff's status as the holder of the note and, therefore, its status as the presumptive owner of the debt, fall short, as she failed to establish an adequate foundation to support the admission of her personal interpretation of the various banking documents she referred to in her affidavit or that were submitted by her in opposition to the plaintiff's motion for summary judgment. She also presented no evidence that some entity other than the plaintiff owned the note at the time this action was commenced or at any time thereafter.

In summary, the prior production of the original note, the plaintiff's detailed affidavits, and statutory and case law establish that the plaintiff is the successor to World Savings and entitled to enforce the note. For all the foregoing reasons, we conclude that the court properly found that the plaintiff had standing to foreclose on the note and mortgage in granting the motion for summary judgment as to liability. The defendant's submissions in opposition to summary judgment fail to satisfy her burden to overcome, with competent evidence, the presumption that the plaintiff, as the holder of the note, is also the owner and is entitled to enforce the note.

## II

Next, the defendant claims that, after the court granted the plaintiff's motion for summary judgment with respect to liability but prior to the time that it rendered the judgment of strict foreclosure, it deprived her of her right to conduct additional discovery and her right to a new trial related to the fact that, following the rendition of summary judgment, the plaintiff attached a blank endorsement to the note at issue in this action. We will address each aspect of this claim separately.

## A

We first address the defendant's claim that she was denied a "new" trial, which we decline to review because the record is inadequate for review.[23]

The following additional facts are relevant to this claim. The defendant filed a motion for summary judgment on May 8, 2017, in which she focused on the significance of the fact that the note was not endorsed in favor of the plaintiff. On June 22, 2017, the plaintiff filed a notice of supplemental document production, in which it included a copy of the note with an allonge blank endorsement dated February 8, 2017. When Judge Koletsky subsequently considered the defendant's motion, he treated it as a motion to reargue and, after a hearing, denied it on August 17, 2017, indicating that he had heard "extensive presentations from both parties."

The defendant later filed a motion for a new trial on September 8, 2017, and a cross motion for summary judgment on August 24, 2017, both of which focused on the issue of whether the blank endorsement that the plaintiff had added to the note, postsummary judgment, was newly discovered evidence material to the issue of the plaintiff's standing. As she did before the trial court, she asserts on appeal that the emergence of the blank endorsement raised the suspicion that the plaintiff was not the holder of the note when it commenced the action.

On September 11, 2017, prior to ruling on the plaintiff's motion for a judgment of strict foreclosure, Judge

Calmar addressed the defendant's motion for a new trial and her cross motion for summary judgment. After concluding that Judge Koletsky had been made aware of and considered the defendant's claim regarding the new blank endorsement that had been added to the note, Judge Calmar marked both the defendant's cross motion for summary judgment and her motion for a new trial off, ruling, "[a]s to the cross motion for summary judgment and the motion for a new trial, no action is necessary because there is no issue. First of all, Judge Koletsky had denied essentially a motion to reargue, which he termed a motion to reargue, so liability's resolved. And there's, therefore, no basis to have a motion for summary judgment pending. And whereas [the motion for a new trial] also was a motion to reargue effectively as to the issue of liability, he essentially denied a motion to retry the issues."

As a result of Judge Calmar's marking these two motions off, there is no ruling on the motion for a new trial by Judge Calmar that we can review. The law of the case, as determined by Judge Calmar, was the decision of Judge Koletsky denying the defendant's motion for summary judgment. The defendant has failed to provide this court with a transcript of the proceedings before Judge Koletsky. Whether Judge Calmar was correct in determining that Judge Koletsky had considered the defendant's claim of newly discovered evidence on the basis of the blank endorsement, or whether Judge Koletsky properly heard and rejected that claim, cannot be determined without reviewing the transcript of the proceedings before Judge Koletsky prior to August, 17, 2017, the date on which he denied the defendant's motion. Accordingly, the record is inadequate to review this particular claim.

B

The defendant also claims that she was denied "discovery" in order to properly undermine the plaintiff's claim of standing as a result of the attachment of the blank endorsement to the plaintiff's note after summary judgment was rendered in favor of the plaintiff. We decline to review this claim because it is inadequately briefed and unsupported by an adequate record.

In the context of this claim, which is related to the denial of the defendant's right to discovery and a new trial, the defendant refers only to Judge Calmar's denial of her application for issuance of subpoenas by a self-represented party. The plaintiff, in its appellate brief, has interpreted the defendant's claim as being related to this ruling. Presumably, out of an abundance of caution, the plaintiff has briefed the issue of whether the court abused its discretion in not permitting the defendant to subpoena its attorneys prior to the hearing on the motion for a judgment of strict foreclosure. The denial of those applications, however, are not encompassed in the defendant's stated claim or discussed in

her brief. Moreover, it was two different judges, Judge Nazzaro, in granting the plaintiff's motion to quash, and Judge Cosgrove, in denying her second application for subpoenas, who denied the defendant's request to subpoena the plaintiff's attorneys.

In addressing her claim for a denial of "discovery," the defendant briefly refers to the court's failure to allow her to issue subpoenas "for interrogatories" and then specifically refers only to the transcript of the hearings on the motion for a judgment of strict foreclosure before Judge Calmar on October 30, 2017, as the source for this ruling. First, we note that subpoenas are not used for discovery or for the purpose of posing interrogatories. Judge Calmar, during the hearing on the motion for a judgment of strict foreclosure, denied the defendant's application to subpoena Duckett and Mueggenberg as witnesses as "moot" because the defendant's request was relevant to the issue concerning the blank endorsement, which he determined Judge Koletsky already had addressed.

Construing the defendant's "discovery" claim to encompass Judge Calmar's ruling on her September 6, 2017 application for subpoenas, we note that the rationale for his ruling—that Judge Koletsky had fully considered her claims as to the late emergence of a blank endorsement to the note—is not referred to in the defendant's brief. The issue of whether Judge Calmar's ruling on her application for subpoenas was an abuse of discretion is not even discussed except for her bare conclusory assertion that "the court, in an abuse of discretion, denied the defendant discovery on the blank endorsement . . . ." We, therefore, conclude that any claim with respect to the denial of her application for subpoenas has been inadequately briefed. "Although we are solicitous of the rights of pro se litigants . . . [s]uch a litigant is bound by the same rules . . . and procedure as those qualified to practice law. . . . [W]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Citation omitted; internal quotation marks omitted.) *Thompson* v. *Rhodes*, 125 Conn. App. 649, 651, 10 A.3d 537 (2010); see also *Packard* v. *Packard*, 181 Conn. App. 404, 405 n.3, 186 A.3d 795 (2018).

In addition, as we previously determined relative to the defendant's claim regarding the denial of her motion for a new trial, whether Judge Calmar's denial of her application for subpoenas as moot was an abuse of discretion would necessitate a review of the transcript of the proceedings that occurred before Judge Koletsky, and the defendant has failed to provide us with a transcript of those proceedings. Because the defendant has failed to adequately brief her claim or to provide this court with an adequate record to review it, we are

unable to consider its merits.

### III

The defendant's final claim is that the court erred in striking two counts of her counterclaim alleging CUTPA and TILA violations.[24] Relying on the reasons explained and the authority set forth in part II B of this opinion, we decline to review this claim because it is inadequately briefed.

"Claims are . . . inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . ." (Citation omitted; internal quotation marks omitted.) *Electrical Contractors, Inc.* v. *Dept. of Education*, 303 Conn. 402, 444 n.40, 35 A.3d 188 (2012). "Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Artiaco* v. *Commissioner of Correction*, 180 Conn. App. 243, 248–49, 182 A.3d 1208, cert. denied, 328 Conn. 931, 184 A.3d 758 (2018).

Those portions of the defendant's principal and reply briefs that address the stricken counts of her counterclaim under CUTPA and TILA fail to address, much less analyze, the standard of review with respect to motions to strike, the application of the second limitation to the rule that a statute of limitations must be pleaded as a special defense, as set forth in *Forbes* v. *Ballaro*, supra, 31 Conn. App. 239, on which the trial court relied, or the precise nature of the allegations pleaded in her revised counterclaim that rendered her claims legally sufficient to refute the court's conclusion that the statutes of limitations relevant to her TILA and CUTPA claims had expired. In her principal and reply briefs, the defendant also improperly alludes to additional facts concerning an alleged denial of her right to a mortgage modification or other relief programs as a violation of CUTPA, which were not alleged in the operative revised counterclaim.[25]

The judgment is affirmed and the case is remanded for the purpose of setting a new law day.

In this opinion the other judges concurred.

[1] The defendant was self-represented during the proceedings at trial and during the present appeal.

[2] The defendant makes four separate claims of error in her appellate brief, but we have combined her first two claims, as they both relate to whether the plaintiff had standing to initiate the foreclosure action.

[3] "[TILA], as amended in particular by the Truth-in-Lending Simplification Reform Act of 1980, was enacted as part of the Consumer Credit Protection Act of 1968, and is codified at 15 U.S.C. § 1601 et seq. The purpose of TILA is to promote the informed use of consumer credit by requiring disclosures about its terms and cost. See 12 C.F.R. § 1026.1." *Cheshire Mortgage Services, Inc.* v. *Montes*, 223 Conn. 80, 96–97, 612 A.2d 1130 (1992). In order to carry out this purpose, "Regulation Z," codified at 12 C.F.R. 226.1 et seq., was promulgated. Id., 97.

[4] Several judges issued relevant rulings in this case. We are identifying them by name for purposes of clarity.

[5] Judge Cosgrove ultimately rendered summary judgment in favor of the

plaintiff on the defendant's counterclaim alleging breach of contract.

[6] See paragraphs 7, 8, 9, 10 and 30 of the defendant's revised counterclaim.

[7] Civil liability under TILA is codified at 15 U.S.C. § 1640 (e), which limits actions under this section to within one year from the date of the occurrence of the violation, except in an action to collect the debt that was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action. The right of a person to bring a civil action for liability against a creditor that does not comply with the requirements imposed by TILA is not a right that existed at common law. Therefore, Judge Cosgrove concluded that he could consider the plaintiff's statute of limitations arguments regarding TILA as to counts seven through ten and thirty of the counterclaim on its motion to strike.

[8] Judge Cosgrove also noted that the defendant had misapprehended the distinction between counterclaims and special defenses.

[9] Title 12 of the United States Code, § 215a (e) provides in relevant part: "The corporate existence of each of the merging banks or banking associations participating in such merger shall be merged into and continued in the receiving association and such receiving association shall be deemed to be the same corporation as each bank or banking association participating in the merger. All rights, franchises, and interests of the individual merging banks or banking associations in and to every type of property (real, personal, and mixed) and choses in action shall be transferred to and vested in the receiving association by virtue of such merger without any deed or other transfer. The receiving association, upon the merger and without any order or other action on the part of any court or otherwise, shall hold and enjoy all rights of property, franchises, and interests . . . in the same manner and to the same extent as such rights, franchises, and interests were held or enjoyed by any one of the merging banks or banking associations at the time of the merger . . . ."

[10] The defendant filed a motion to strike the affidavits of Smith and Hoff that were submitted by the plaintiff in support of its motion for summary judgment. The court denied this motion to strike, citing "settled law" in Connecticut that affidavits based on a review of business records are properly relied on by a court to resolve summary judgment issues. See *RMS Residential Properties, LLC* v. *Miller*, 303 Conn. 224, 235–36, 32 A.2d 307 (2011) ("[u]nder General Statutes § 52-180, to be competent to testify, the affiant need only have personal knowledge of the relevant business records . . . and not the act, transaction or occurrence recounted therein" [citation omitted; footnote omitted]), overruled in part by *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 325 n.8, 71 A.3d 494 (2013); *American Home Mortgage Servicing, Inc.* v. *Reilly*, 157 Conn. App. 127, 136, 117 A.3d 500 ("it is well established that a court may rely on an affidavit when the affiant acquired personal knowledge from a review of underlying business records"), cert. denied, 317 Conn. 915, 117 A.3d 854 (2015). The denial of the defendant's motion to strike these affidavits is not challenged on appeal.

[11] General Statutes § 42a-3-207 provides: "Reacquisition of an instrument occurs if it is transferred to a former holder, by negotiation or otherwise. A former holder who reacquires the instrument may cancel endorsements made after the reacquirer first became a holder of the instrument. If the cancellation causes the instrument to be payable to the reacquirer or to bearer, the reacquirer may negotiate the instrument. An endorser whose endorsement is cancelled is discharged, and the discharge is effective against any subsequent holder."

[12] In the same memorandum of decision, the court also rendered summary judgment in favor of the plaintiff on the defendant's counterclaim for breach of contract. The propriety of the court's summary judgment ruling on the counterclaim for breach of contract is not a subject of this appeal.

[13] In its appellate brief, the plaintiff discusses, at length, the defendant's vigorous and extensive discovery pursuits in which she sought information from it related to sale of the note five years before the plaintiff commenced this action. The plaintiff maintains that, prior to moving for summary judgment, it complied with these efforts by producing documentation as to the note's history. Several months prior to the date on which the court heard the plaintiff's motion for summary judgment, the court sustained the plaintiff's objection to the defendant's supplemental requests for documents and its objection to two motions filed by the defendant to compel discovery. In its first order, the court concluded: "There has been good faith compliance with the defendant's discovery request relating to the financial transaction at issue." In its memorandum of decision granting the plaintiff's motion for summary judgment, the court, in denying the defendant a continuance

requested by affidavit for additional discovery as to the sale of the note in order to oppose the motion, stated: "The defendant raises as an additional issue that the plaintiff has not complied with discovery that she had filed. This dispute was the subject of numerous motions and hearings before the court. The court previously indicated that it was satisfied that the plaintiff had complied with the discovery requests and provided the defendant with the documentation as to the ownership of her loan. The defendant has not made a persuasive case now or in the hearings on the prior discovery motions that information was being withheld improperly."

[14] The Duckett affidavit, filed on April 20, 2017; the defendant's motion for summary judgment dated May 8, 2017; the plaintiff's objection to it on June 22, 2017; and the plaintiff's notice of supplemental document production, also filed on June 22, 2017, clearly demonstrate that the defendant was on notice that there had been a blank endorsement attached to the note well before Judge Koletsky considered her motion for summary judgment. The plaintiff maintains that the endorsement did nothing to change the plaintiff's status as the holder of the note.

[15] The defendant has not appealed from the denial of her motion to open the judgment.

[16] A screenshot of the "Loan Transfer History" is annexed to Hoff's affidavit as exhibit B.

[17] A copy of the "Investor/Category Matrix," redacted to show only title, headings and the investors identified on the "Loan Transfer History," is attached to Hoff's affidavit as exhibit C.

[18] There was evidence that, on December 31, 2008, World Loan was renamed to World Loan Company, LLC.

[19] The defendant also attached case law, articles and federal regulations to her objection to the plaintiff's motion for summary judgment, which she asked the court to use in the adjudication of the motion for summary judgment. It suffices to observe that none of these submissions gives rise to a genuine issue of material fact as to whether the plaintiff is entitled to summary judgment in its favor.

[20] As a result of the name change, any interest that World Savings had in the defendant's note "inure[d] to the association under its new name [Wachovia]." 12 U.S.C. § 31 (2017).

[21] Prior to merging with the plaintiff, Wachovia was converted into Wells Fargo Bank, Southwest, N.A., which retained Wachovia's interest in the note pursuant to 12 C.F.R. § 5.24 (i) (2019).

[22] The record reflects that the mortgage has not been assigned to the plaintiff. Section 49-17, however, "codifies the well established common-law principle that the mortgage follows the note, pursuant to which only the rightful owner of the note has the right to enforce the mortgage. . . . Our legislature, by adopting § 49-17, created a statutory right for the rightful owner of a note to foreclose on real property regardless of whether the mortgage has been assigned to him." (Citations omitted.) *RMS Residential Properties, LLC* v. *Miller*, 303 Conn. 224, 230, 32 A.3d 307 (2011), overruled on other grounds by *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 325 n.8, 71 A.3d 492 (2013).

[23] The defendant's motion for a new trial is inaptly named because there never was any trial at all. Moreover, the defendant, in her appellate brief, asserts that she was denied a new trial on the basis of newly discovered evidence under General Statutes § 52-270, but she did not file a proper petition pursuant to that statute.

[24] The defendant also claims that the court improperly "dismissed" her special defenses. Although she filed a series of counterclaims, she never filed any special defenses, only a disclosure of defenses on February 2, 2015. There are no special defenses included in her answer to the complaint. Moreover, she does not identify any particular ruling wherein the court "dismissed" her special defenses.

[25] The defendant also failed to include copies of the relevant pleadings and the court's memorandum of decision striking her counterclaim in her appendices, in violation of Practice Book § 67-8 (b) (1).